John A. LUMINELLA, Appellee,

v.

Debra MARCOCCI, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 9, 2002.
Filed Dec. 23, 2002.

William J. Gallagher, West Chester, for appellant.

Thomas J. Wagner, West Chester, for appellee.

Before: HUDOCK, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Appellant, Debra Marcocci ("mother"), appeals from the custody order of March 28, 2002, and the contempt order of March 20, 2002, entered by the court below. Mother argues four issues on appeal.

¶ 2 Two of mother's arguments attack the sufficiency of the factual analysis of the court below. Mother argues that the trial court erred by: inadequately addressing appellee John Luminella's ("father") treatment of the children, and by concluding that it is in the children's best interest to have unsupervised visits with their father. Contrary to mother's contentions, we find the trial court's findings to be both supported by the record and, as analyzed in the trial court opinion, within its discretion.

¶ 3 Mother's third argument is that the trial court erred by finding her in contempt of its April 8, 1998, order. We find that the trial court did not err in finding mother in contempt, or in the substance of the remedy it imposed for the contempt.

¶ 4 Finally, mother argues that the trial court's order that she undergo drug testing violates the fourth amendment of the United States Constitution. We find that, if the fourth amendment applies to the order, it passes constitutional muster.

¶ 5 Father argues that mother's appeal is frivolous, and urges this Court to award him attorney's fees pursuant to Pa.R.A.P 2744. In light of our discussion of mother's fourth amendment claim, we do not find mother's appeal frivolous or taken solely for delay. Father's request for attorney's fees is denied.

¶ 6 The trial court opinion's Statement of Procedural History provides the foundation upon which we analyze mother's arguments on appeal:

The parties are the parents of three girls: Angela Luminella, D.O.B. 8/22/85; Alexis Luminella, D.O.B. 12/3/87; and Monica Luminella, D.O.B. 12/13/88. The parties did not marry and the children became the subjects of this custody action on December 20, 1989 when Father filed the custody complaint. Since that time the parties have been embroiled in a bitter custody battle with each party, at times, accusing the other of abusing the children. On April 8, 1998, pursuant to an agreement of the parties, the Honorable Michael J. Melody entered a Custody Order which was in effect at the time of [the trial court's] hearing. The terms of a previous order dated March 10, 1997 were to remain in effect; Father and Angela were to begin counseling and visitation, Angela was to begin counseling, and the parties were to be evaluated by Linda Shope Ph.D. Accordingly at the time of our hearing, in the relevant Custody Order, Mother and Father shared legal custody of Angela, Alexis, and Monica. Mother and Father shared physical custody of Alexis and Monica, with the girls living one week at Mother's home, then one week at Father's home. Father had one two-hour visitation with Angela each Saturday, with further visitations subject to Angela's discretion.

On January 10, 2002 Father filed a Petition for Civil Contempt asserting that Mother had failed to comply with the Custody Order. Father averred that as of August 2001, Mother had denied Father his custodial time with Alexis and Monica, that she had denied him all telephone contact with the children, that she had not permitted the children to attend therapy, that she had changed the children's address at school, and that she was discouraging the children from having a relationship with Father.

On January 18, 2002 Mother filed a Petition to Modify Custody in which she sought sole custody of Alexis and Monica. She averred that Alexis (now 14) and Monica (now 13) refused to see their Father because on occasion, he had broken their possessions, had used obscenities in their presence, had failed to feed them properly, and he engaged in the practice of "witchcraft".

On February 22, 2002 the parties appeared before a Custody Conciliator who issued a Custody Order on March 6, 2002. The Order recommended that legal custody be shared and that Mother should have primary custody. Father was awarded custody every other weekend to commence after counseling and a recommendation from the counselor. If the children's current counselor could not provide reunification counseling, Father was to find a counselor who could perform the same. Father filed an objection to the Custody Conciliator's recommendation and the case was certified to proceed to a hearing.

Trial Court Opinion, 5/30/02, at 1–3 (footnotes omitted).

¶ 7 Following father's filing of the petition for civil contempt, and a hearing on the matter, the trial court filed a March 20, 2002, order finding mother in contempt of the trial court's order of April 8, 1998.

Also, after a March 2002 custody hearing, the trial court entered a temporary custody order on March 28.

¶ 8 Mother's petitions to stay and petitions to reconsider both the March 20, 2002, order and the temporary custody order of March 28 were denied by the trial court. Mother now appeals.

1.

¶ 9 Much of mother's argument in this appeal consists of a re-presentation of facts that mother presented below. Mother addresses this Court's attention to "voluminous testimony about Father's abusive conduct toward his children, use of drugs in front of his children and practice of witchcraft." Brief of Appellant at 23. These salient facts are, according to mother, "barely discussed by the Trial Court in its Opinion." *Id.* Such a failure of comprehensive analysis, continues mother's argument, constitutes reversible error.

¶ 10 It is entirely correct for mother to make much of the responsibility of the trial court to develop the record and write a complete opinion. As mother argues:

"In a custody matter, the trial court must file a comprehensive opinion containing its findings and conclusions regarding all pertinent facts." *Alfred v. Braxton,* 442 Pa.Super. 381, 659 A.2d 1040, 1042 (1995). The trial court's opinion should also contain an exhaustive analysis of the record and its specific reasons for its ultimate decision. *Id.*

Brief of Appellant at 27 (quotation marks added and form of citation modified).

¶ 11 Our disagreement with mother's argument arises not with her assertion that a trial court bears a heavy burden to develop the record in a child custody hearing, but in how she would have us apply that maxim to the case at hand. We are not per-

suaded that "the Trial Court's Opinion, although 25 pages in length, does not provide this Court with an exhaustive analysis of the record and the specific reasons for its ultimate decision that Father should be entitled to unsupervised visitation of his children." Brief of Appellant at 27. On the contrary, we find the trial court's opinion sufficient in both its analysis of the record and explanations of its conclusions.

a.

¶ 12 Mother argues that the trial court inadequately addressed father's treatment of the children. Specifically, mother argues that the trial court's opinion evidences inadequate consideration of the evidence she presented below concerning her allegations of: father's verbal and physical abuse of the children, father's use of marijuana in front of the children, father's practice of witchcraft, and the children's dislike of father. Certainly, mother is correct that a legally sufficient child custody opinion must articulate thorough consideration of such evidence. We find that the trial court opinion does articulate consideration of this evidence, though not with the outcome that mother intended. Simply put: The trial court, balancing mother's evidence against father's, was not persuaded to mother's position. Because the trial court conducted its evidence-balancing test from a vantage point of being able to gauge the credibility of witnesses and assign weight to evidence as it was presented, its opinion is entitled to a measure of deference. *S.H. v. B.L.H.,* 392 Pa.Super. 137, 572 A.2d 730 (1990).

¶ 13 "The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no compe-tent evidence to support it." *Watters v. Watters,* 757 A.2d 966, 967 (Pa.Super.2000). "However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination." *Id.* "Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion." *Id.*

i.

¶ 14 Reviewing the record and the opinion of the trial court we find that the court did sufficiently address father's treatment of the children. The trial court opinion is replete with analysis of allegations that father abused the children.

¶ 15 During examination of the children, the trial court uncovered only one incident "in which Father had grabbed Monica by the arm." Trial Court Opinion, 5/30/02, at 19. Continuing, the court found that "when the children were pressed for further examples of Father's outbursts, neither child could recall any other incidents with specificity." *Id.* Moreover, "Angela denied that father had ever hit her," *Id.,* and "Monica reported that Father was 'nice most of the time.'" *Id.* "Alexis and Monica both stated that Father was prone to outbursts, yet both children also testified about Father's positive attributes." Trial Court Opinion, 5/30/02, at 22.

¶ 16 The court also had testimony from witnesses other than the children to form its understanding of father's treatment of the children. The court found father to be a credible witness. "[Father] testified that he had occasionally lost his temper, but he denied ever abusing the children." Trial Court Opinion, 5/30/02, at 21. The court

considered the testimony of Gigi Cohen, who lives with father, and that of her son, Martin: "Neither testified to observing anything that would indicate that the girls were unhappy when they stayed with Father." Trial Court Opinion, 5/30/02, at 22.

¶ 17 With respect to mother's claims of father's abusive treatment of the children, the court ultimately concluded: "Father is motivated to see his children and [we believe] that his behavior will be appropriate." Trial Court Opinion, 5/30/02, at 22. We find this conclusion to be well founded in the record and within the trial court's discretion in its role as finder of fact.

### ii.

¶ 18 Similarly, we cannot find that the trial court erred by finding that father did not use marijuana in front of the children. Despite the testimony of the children that father used marijuana in front of them, the court was simply "not convinced that Father had used marijuana in the girls' presence." Trial Court Opinion, 5/30/02, at 19.

¶ 19 Challenging the trial court's determination of witness credibility—and citing *Barron v. Barron,* 406 Pa.Super. 401, 594 A.2d 682 (1991)—mother argues that "[w]hen a trial court makes a credibility determination relative to a party's use of an intoxicating substance that is not supported in the record, a remand will be ordered by the appellate court." Brief of Appellant at 31–32. In *Barron,* this Court remanded a custody order which had granted custody to a heavy-drinking father. The order was remanded because the trial court had explicitly misstated the very portions of the record that it claimed as support for its legal conclusions. In our case, the trial court did not render its legal conclusions unfounded by misconstruing testimony. Rather, the trial court

weighed the credibility of contrasting testimony.

¶ 20 Also persuasive in *Barron* was the father's uncontroverted habit of drinking to excess. The father in *Barron* did not deny that he had a drinking problem, he only argued that his problem did not rise to the level of alcoholism. This Court, supporting is decision to remand the *Barron* case, noted that the trial court failed to weigh the father's uncontroverted drinking habit in its determination of the children's best interests. In our case, the question is not the seriousness of father's drug use, but whether father used drugs at all. Because the trial court did not find that father used drugs, it would be nonsensical to require it to consider drug use in its custody decision.

¶ 21 The trial court was within its discretion to find that father had not used drugs in front of the children. Father did not concede that he had; witnesses testified that he had. "[T]he credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear." *S.H. v. B.L.H.,* 392 Pa.Super. 137, 572 A.2d 730, 731 (1990).

### iii.

¶ 22 Mother argues that "[t]he trial court failed to adequately consider the harmful effects of Father's religion upon his children." Brief of Appellant at 33. Religion merits consideration in child custody cases, *Boylan v. Boylan,* 395 Pa.Super. 280, 577 A.2d 218 (1990), but we are not persuaded that the trial court failed to properly analyze the effect father's unusual religion had on the children.

¶ 23 The trial court noted that father initially included the children in his religious practice of "Neo-paganism," but

did not force them to participate. Trial Court Opinion, 5/30/02, at 20. The Court found that father's religious beliefs were not harming the children. *Id.* As noted by the trial court: "Unless it can be shown that a parent's conduct has had harmful effects on a child, it should have little weight in making a custody decision." Trial Court Opinion, 5/30/02, at 20 (quoting *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555, 558 (1981)). Mother's exhortations that the children did not like their father's practice of Neopaganism do not lead inevitably to the conclusion that father's religious practices were harming the children.

iv.

¶ 24 We do not agree with mother that "the Trial Court failed to explain how it weighed the children's preferences." Brief of Appellant at 34. From the trial court opinion, we know that "During [the Trial Court's] interviews with Alexis and Monica they expressed a desire to live with their Mother." Trial Court Opinion, 5/30/02, at 18. Noting that the child's wishes are "an important factor that must be carefully considered in determining the child's best interest," Trial Court Opinion, 5/30/02, at 18 (quoting *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845, 847 (1992)), the court crafted a custody schedule to "serve the girls throughout the school year while also ensuring that they have a relationship with their Father." Trial Court Opinion, 5/30/02, at 19. "Pursuant to the Custody Order entered, the girls reside primarily with their Mother. They spend one night per week with Father and every other weekend. During the summer the girls will rotate one week with Father and one week with Mother." *Id.*

b.

¶ 25 Mother's second main argument condemning the sufficiency of the trial court's findings and analysis is that "the Trial Court committed an error of law or gross abuse of discretion when it concluded that it was in the children's best interests to have unsupervised visits with Father." Brief of Appellant at 35. On this point, mother raises, once again, issues of father's treatment of the children. She argues that because of father's alleged "physical abuse, emotional abuse, drug use and practice of witchcraft," the children were afraid of father. Brief of Appellant at 36. Citing *Stoyko v. Stoyko*, 267 Pa.Super. 24, 405 A.2d 1284 (1979), she suggests that, because the children expressed fear of father, the trial court was required to conduct an exploration of father's relationship with the children to evaluate the origin of the children's fears of father, and whether they continue to fear father.

¶ 26 *Stoyko* stands for the proposition that a child's bald claim of resentment and fear of a parent is insufficient, absent a judicial inquiry into the past and present relationship between parent and child, to deny visitation rights. In our case, the trial court conducted a sufficient inquiry, as already discussed herein, into the relationship between father and the children. Contrary to mother's assertions, *Stoyko* did not require that the trial court conduct a special evaluation of the origin and development of the children's fear of father.

2.

¶ 27 Mother's third main argument is that the trial court erred by finding mother in contempt. The trial court explains that it found mother in contempt because "Mother admitted that she stopped participating in the partial custody provision of the April 8, 1998 Order." Trial Court Opinion, 5/30/02, at 23. Also, "[t]he April 8, 1998 Order provides that Father's home address shall be considered the children's 'home address' for purposes of school at-

tendance. We believe that in violation of the April 8, 1998 Order, Mother changed the children's school information so that Mother's address was the address listed." Trial Court Opinion, 5/30/02, at 23–24 (citation to April 8, 1998, order omitted).

¶ 28 The trial court order of March 20, 2002, found mother in contempt, placed mother on probation for a period of six months, compelled mother to undergo psychological testing, and compelled mother to pay to father a fine of $500.00 plus attorney's fees of $1,000.00.

¶ 29 Mother argues that the trial court erred because "Mother did not exhibit willful contempt of the Trial Court's April 8, 1998 Order," Brief of Appellant at 24, and because the order "had the effect of punishing Mother," Brief of Appellant at 25. We find that the trial court did not err in its contempt order.

¶ 30 Mother argues that she was not in willful contempt because she was not able to force the children to see father as the order required. But, in contrast, she also concedes that, "[f]or a long time," she "kept making the girls go [to visit Father] in accordance with the Trial Court's April 8, 2002 Order." Brief of Appellant at 39. Apparently, mother feels that over time she grew unable to force her children to comply with the order because "[s]he had good reason to fear for her daughter's [sic] safety, especially given her own experiences over ten years with their Father." Brief of Appellant at 40. As her argument goes, "Mother took it on herself to try to solve the situation by enrolling her daughter's [sic] in counseling where they could work on their issues regarding Father." Id.

¶ 31 To accept Mother's argument is to accept anarchy. By relying on fears for the children's safety as a reason that she could not comply with the court order, mother relies on factors she should have argued during the development of the custody order of April 8. It is not for mother to take it upon herself to solve the issues addressed in the order by enrolling the children in counseling. The court, before which mother had a chance to present her case, issued an order. As the trial court notes: Mother "did not pursue modifying the [C]ustody [O]rder until Father filed a Contempt action." Trial Court Opinion, 5/30/02 at 24. Mother is not permitted to ignore the order and unilaterally institute measures she feels appropriate instead of the order.

¶ 32 Moreover, the trial court's contempt order did not have the effect of punishing mother. Mother bases her position on her allegations that the $500.00 fine did not compensate father for litigation expenses, that mother would be hard pressed to afford the fine, and that the trial court's award of $1,000.00 of attorney's fees was arbitrary. Even if the $500.00 fine did not compensate father for litigation expenses, it served to compensate him for mother's violation of his court-mandated rights to custody of his children and, thus, was proper. *Goodman v. Goodman,* 383 Pa.Super. 374, 556 A.2d 1379, 1392 n. 8 (1989). Moreover, the award of attorney's fees is a proper exercise of the trial court's civil contempt power. "Because an award of counsel fees is 'intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent,' it is 'coercive and compensatory, and not punitive.'" *Id.* (citation removed). We cannot find that the award was punitive in nature, as mother argues, based on the fact that at the contempt hearing "[t]he majority of the testimony ... focused on Mother's petition to modify the custody order." Brief of Appellant at 41. Placing "great reliance on the sound discretion of the trial judge," we find the award of attorney's fees to be reasonable.

*Flannery v. Iberti,* 763 A.2d 927, 929 (Pa.Super.2000). We cannot find that the award of attorney's fees constituted "a clear abuse of discretion." *Id.*

### 3.

¶ 33 Finally, we address mother's argument that the trial court's order that she undergo random drug testing violates her rights under the fourth amendment to the United States Constitution.

¶ 34 Mother and father were ordered to undergo monthly random drug testing pursuant to the custody order issued by the trial court on March 28, 2002. The fault that mother finds in this demand is that "there was absolutely no evidence presented that Mother ever used drugs." Brief of Appellant at 38. Mother argues that "in order for a court to require an individual to undergo compulsory drug tests, the court must be able to articulate some basis for a reasonable suspicion that the person is or has been in the past under the influence of drugs or intoxicants." *Id.*

¶ 35 The trial court does not specify the authority through which it ordered mother to undergo drug testing. Such authority does exist, however, in Pa.R.C.P. 1915.8, which provides for court-ordered physical and mental examinations of children or parties in actions for custody or visitation. Pa.R.C.P. 1915.8 does not explicitly require that a court articulate a basis of reasonable suspicion—based on evidence presented by the parties—to support an order issued pursuant to its rubric. Nor does mother direct us to any Pennsylvania law finding such a requirement.

¶ 36 We consider whether the fourth amendment to the United States Constitution requires such a basis:

The fourth amendment provides:

The right of the people to be secure in their persons, houses, papers, and ef-fects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

¶ 37 Finding no Pennsylvania cases addressing the application of the fourth amendment of the United States Constitution to Pa.R.C.P. 1915.8, we turn to federal law.

¶ 38 The fourth amendment applies to the states through the fourteenth amendment. *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). It requires that government searches be reasonable. The reasonableness of a particular search is judged in a balance of its intrusion on the individual's fourth amendment interests against its promotion of legitimate government interests. *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

¶ 39 The requirements of reasonableness in the context of criminal search and seizure are commonly known. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, [the Supreme] Court has said that reasonableness generally requires the obtaining of a judicial warrant. Warrants cannot be issued, of course, without the showing of probable cause required by the Warrant Clause." *Vernonia School District 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (citation removed). The working of the fourth amendment in the civil context—while "[t]he Supreme Court has made clear that fourth amendment protection is not restricted to searches and seizures designed to uncover criminal wrongdoing"—is less clear. *United States v. International*

*Business Machines Corp.,* 83 F.R.D. 97, 103 (S.D.N.Y.1979).

¶ 40 With a dearth of legal analysis, mother cites *Armington v. School District of Philadelphia,* 767 F.Supp. 661 (E.D.Pa. 1991), for her assertion that the court must have "some sort of information that a party has used drugs or uses drugs," Brief of Appellant at 38, in order for the court-ordered drug testing to be reasonable as required by the fourth amendment. Because *Armington* addressed the application of the fourth amendment to drug testing of government employees, a context with vastly different expectations of privacy and government interests at issue than those at hand, it is inapplicable.

¶ 41 More relevant to our consideration is *United States v. International Business Machines,* in which the United States Court for the Southern District of New York addressed the application of the fourth amendment to quash a governmental discovery subpoena issued pursuant to the federal rules of civil procedure. 83 F.R.D. 97 (S.D.N.Y.1979). In its search for law addressing the issue of fourth amendment challenges to civil discovery, the court found only three cases:

> In *General Petroleum Corp. v. District Court,* 213 F.2d 689 (9th Cir.1954), the court noted but did not deal with petitioner's argument that the trial court's order for production of documents called for an unreasonable search and seizure. The district court in *Rekeweg v. Federal Mutual Insurance Co.,* 27 F.R.D. 431 (N.D.Ind.1961), rejected defendant's constitutional claims made in response to a rule 34 motion for production of documents. "The documents here sought are not to be used in a criminal prosecution … nor do they constitute practically all of the records of the corporation…." 27 F.R.D. at 438. Although the court's reasoning is inexpli-

cit, it may be inferred that the court thought defendant's fourth amendment claims appropriately raised and rejected them on the merits. In *United States v. Aluminum Co. of America,* 1 F.R.D. 57 (S.D.N.Y.1939), the district court stated that the subpoena duces tecum sought to be quashed by defendant "would constitute an invasion of the constitutional right of Alcoa to be free from an unreasonable search." 1 F.R.D. at 57–58. While *Alcoa,* and perhaps *Rekeweg,* may be said to stand for the proposition that discovery requests made in the course of a civil trial are subject to fourth amendment reasonableness protection, they contain little or no analysis to support that conclusion. The court finds them unconvincing.

83 F.R.D. at 101.

¶ 42 Ultimately, the *International Business Machines* court, finding itself "left in doubt" about the application of the fourth amendment to civil discovery, assumed the amendment's application for purposes of its decision. *International Business Machines,* 83 F.R.D. at 103. The court found that, if the amendment's requirement of reasonableness applies to civil discovery, the requirement is met by the strictures of both the federal rules of civil procedure and caselaw encompassing those rules. The court specifically endorsed several factors as being germane to determination of the reasonableness of discovery: relevance, the need of the party for documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.

¶ 43 Following the Southern District of New York's ruling in *International Business Machines,* the law of application of the fourth amendment in non-criminal contexts has developed. As noted recently by the Supreme Court in *Vernonia School*

*District 47J v. Acton:* "A search unsupported by probable cause can be constitutional,˙ ...., when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (quotation marks removed).

■ ¶ 44 In the case at hand, the fourth amendment's requirement of reasonableness, if the amendment in fact applies to civil discovery procedure, is met in Pa.R.C.P.1915.8 as applied by the trial court. Pennsylvania's interest in the protection of children who are the subject of custody disputes justifies the trial court's order, pursuant to Pa.R.C.P.1915.8, that mother undergo and pay for random drug testing.

¶ 45 In *Vernonia,* the Supreme Court applied a balancing test to determine the reasonableness of a government search that was conducted pursuant to special needs beyond the normal need for law enforcement. The Court vacated the judgment of the Ninth Circuit, which had held the Vernonia School District's practice of drug testing of student athletes to be violative of the fourth amendment. To reach its conclusion, the *Vernonia* Court analyzed the search under a three-prong test balancing: 1) "the nature of the privacy interest upon which the search ... at issue intrudes" 515 U.S. at 654, 115 S.Ct. 2386; 2) "the character of the intrusion that is complained of" 515 U.S. at 658, 115 S.Ct. 2386; and 3) "the nature and immediacy of the governmental concern at issue ..., and the efficacy of [the] means for meeting it." 515 U.S. at 660, 115 S.Ct. 2386. The Court found the student athlete drug testing search reasonable considering: 1) the student athletes reduced expectation of privacy; 2) the not-significant invasion of privacy represented by the drug testing; and 3) the important—or perhaps compelling—

purpose of deterring drug use among children, combined with the effectiveness of the drug testing of student athletes to combat the problem of the "role model" effect of athletes' drug use.

¶ 46 Our analysis, under the *Vernonia* reasonableness balancing test, of the trial court's exercise of Pa.R.C.P.1915.8 authority leads us to conclude that, if the fourth amendment applies, the trial court's application of Rule 1915.8 passes constitutional muster.

¶ 47 First, we consider the nature of mother's fourth amendment privacy interest upon which the ordered drug testing intrudes.˙ As pointed out by the *Vernonia* Court:

> The Fourth amendment does not protect all subjective expectations of privacy, but only those that society recognizes as legitimate. What expectations are legit-, imate varies, of course, with˙ context, depending, for example, upon whether the individual˙ asserting the privacy interest is at home, at work, in a car, or in a public park. In addition, the legitimacy of certain privacy expectations vis-a-vis the State may depend upon the individual's legal relationship with the State.

*Vernonia,* 515 U.S. at 654, 115 S.Ct. 2386 (quotation marks and citations omitted).

■ ¶ 48 The civil litigant generally, and the custody dispute litigant in particular, has a drastically reduced expectation of privacy—and necessarily so. In order to minimize "substantially unfair or mistaken deprivations" of rights, civil procedure provides for a fundamental and thorough examination of all issues—private and public—that are germane to the determination of life, liberty, or property at issue. *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The great intrusion into the privacy of the˙ civil litigant, which is inherent to the process

due a litigant, is necessary to ensure the greatest possibility of sound resolution of his or her rights.

¶ 49 Mother, as a child custody litigant, has an even lower reasonable expectation of privacy than the general civil litigant. In anticipation of her custody hearing, she could reasonably expect that the very core of her privacy interests—her home life and child rearing practices—would be the central focus of the hearing. The Supreme Court has emphasized, in other contexts, the significance of the rights at peril in a child custody determination:

> The rights to conceive and to raise one's children have been deemed "essential," "basic civil rights of man," and "rights far more precious ... than property rights[.]" "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment[.]

*Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (citations removed). Anticipation of a thorough disclosure of such significant matters might have made mother anxious, but it should also have engendered faith that the core of her fundamental rights would not suffer capricious determination.

¶ 50 Pennsylvania law, specifically the right to privacy protected by Pennsylvania's constitution, may have colored mother's reasonable expectation of privacy in this matter. In the context of disputes concerning child welfare, the Pennsylvania constitutional right to privacy has been held to bar compelled disclosure of psycho-

logical tests. *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978); *In re T.R.,* 557 Pa. 99, 731 A.2d 1276 (1999). Here, drug testing is at issue, not mother's "innermost thoughts and feelings" drawn from a probing psychology professional. *In re T.R.,* 557 Pa. at 109 n. 1, 731 A.2d 1276. As we discuss immediately below, the United States Supreme Court has found drug testing in various forms to constitute a negligible, or not significant, intrusion of privacy. In sum, we find mother to have had a low reasonable expectation of privacy.

¶ 51 Our second consideration under the *Vernonia* balancing test is the character of the intrusion that is complained of. The record fails to specify the manner in which mother will be drug tested. Mother has not complained about the manner of the testing so much as the fact that she is to be tested at all.

¶ 52 Conceivably, mother could undergo drug testing of her urine, blood, or hair. "The privacy concerns ordinarily implicated by urinalysis drug testing are 'negligible,' when the procedures used in collecting and analyzing the urine samples are set up 'to reduce the intrusiveness' of the process." *Chandler v. Miller,* 520 U.S. 305, 326, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) (quoting *Vernonia,* 515 U.S. at 658, 115 S.Ct. 2386). The Supreme Court has found that "the intrusion occasioned by a blood test is not significant." *Skinner,* 489 U.S. at 625, 109 S.Ct. 1402 (1989). With respect to drug testing of the hair: It strains reason to imagine that an analysis of strands of hair for drug use is more intrusive than either urine or blood testing.

¶ 53 Considering our resolution of the other two prongs of the reasonableness test, we find identification of the particular method and specific manner of drug test-

ing unessential to our resolution of the reasonableness of the search. Assuming conventional testing methods, we conceive of no drug test that would be so intrusive as to trump mother's low expectation of privacy and, as we discuss next, the compelling nature of the government concern here at issue.

¶ 54 Our third, and final, consideration under the *Vernonia* balancing test is the nature and immediacy of the governmental concern at issue here, and the efficacy of the government's means for meeting it. The nature of the governmental concern underlying Pa.R.C.P.1915.8 is found with reference to the 1981 Explanatory Comment to the rule and the Comment's comparison of the rule to its non-custody dispute, civil counterpart, Pa.R.C.P. 4010.

¶ 55 Rule 1915.8 allows the court hearing a child custody dispute to compel, *sua sponte*, physical or mental examinations of persons. In contrast, Rule 4010 requires that the compulsion of a person to undergo a physical or mental exam originate with a party request. The reason for this difference between general civil practice and child custody practice is evidenced in the 1981 Explanatory Comment to Rule 1915.8: "Custody cases are not akin to most other cases in the adversary process. The focus is not on parental rights but *unrepresented* children's rights." (quoting Pennsylvania Family Lawyer, p. 7) (emphasis added).

■■■ ¶ 56 The Supreme Court has found the state interest in the welfare of children to be compelling. Recognition of such a strong state interest is what permits the state to overcome a parent's fundamental right to rear her child if a court terminates custody. *Blair v. Supreme Court of Wyoming*, 671 F.2d 389 (1982) (citing *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Quilloin v. Walcott*, 434 U.S. 246,

98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). The authority provided to courts by Pa.R.C.P.1915.8 is a manifestation of Pennsylvania's compelling interest in the welfare of children.

■■■ ¶ 57 We find that Rule 1915.8 effectively facilitates the State's exercise of its interest in the welfare of children. Mother's argument is that the compelled drug testing was unreasonable because no evidence was presented that she used drugs. Accepting mother's argument requires accepting that the only reasonable foundation, or origin, of a rule 1915.8 order for mental or physical examination is evidence presented by the parties. Mother would effectively nullify the right of the court, explicit in Rule 1915.8, to issue a 1915.8 order on its own initiative, absent any initiative taken by the parties to the dispute to present evidence on the matter.

¶ 58 Moreover, mother's argument is implicitly premised on an assumption not shared by the drafters of Rule 1915.8: that the parents embroiled in a custody dispute can be expected to thoroughly represent and present evidence in support of, not only their own interests, but also those of the children. Rule 1915.8 provides that a mental or physical examination can be compelled by the court, on its own initiative, because the children's rights are *unrepresented.*

¶ 59 Rather than finding the reasonableness of the trial court's exercise of Rule 1915.8 authority in evidence presented by the parties, we find it in the 1994 Explanatory Comment to Rule 1915.8: "In order to make a proper determination in a child custody case, the court often requires information which can only be supplied by an expert evaluation of the parties and the subject child." *See* Pa.R.C.P. 219(e) ("A note to a rule or an explanatory comment

is not a part of the rule but may be used in construing the rule."). A court's exercise of its Rule 1915.8 authority is reasonable, as was the trial court's here, when "[i]n order to make a proper determination in a child custody case" it requires information which can be supplied by "an expert evaluation" of the parties or child. Pa.R.C.P. 1915.8 Explanatory Comment 1994.

¶ 60 Such an expansive grant of court-compelled Rule 1915.8 power of discovery, though different in its working from Pa. R.C.P. 4010, is no more expansive than the court-compelled discovery power available to parties in the context of general civil discovery. *See* Pa.R.C.P. 4011. Limited in its applicability as Rule 1915.8 is, to physical and mental examinations in the context of custody and visitation of minors disputes, this grant of authority is no greater than necessary to serve the state's compelling purpose of protection of minors.

¶ 61 In light of mother's minimal reasonable expectation of privacy, the unobtrusiveness of conventional drug testing, and the compelling nature of the state's interest in the protection of children, we find that compelling mother to undergo drug testing is reasonable under the fourth amendment, if it applies.

¶ 62 Order AFFIRMED. Father's request for attorney's fees is DENIED.

¶ 63 FORD ELLIOTT, J., Concurs in the Result.