J-S44017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARK CORRADO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAMMY CORRADO | : | |
| | : | |
| Appellant | : | No. 1788 EDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-01953

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 27, 2024**

Appellant Tammy Corrado (Mother) appeals from the order[1] holding her

in civil contempt of the February 15, 2023 and March 10, 2023 temporary

custody orders. Mother argues that that the trial court erred in finding her in

contempt because the February 15, 2023 and March 10, 2023 orders were

improperly entered. We affirm.

The trial court summarized the facts and procedural history of this

matter as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother filed a separate appeal from the trial court's June 9, 2023 custody order granting Mother and Appellee Mark Corrado (Father) shared legal custody, Mother primary physical custody, and Father partial physical custody of their minor children, E.C. and G.C. (collectively, Children). This Court docketed that appeal at 1789 EDA 2023, and we address that appeal in a separate memorandum.

The parties were married on November 8, 2009. They separated in July 2020 when Mother removed E.C. and G.C. from the [marital] home and moved to a new residence.

*    *    *

[O]n July 28, 2020, Mother filed . . . [a Protection From Abuse (PFA)[2] petition] against Father, . . . on behalf of herself and [Children], alleging that Father had physically abused the minor child, [E.C.] A temporary PFA order was entered on that same date. Thereafter, the final PFA hearing was continued numerous times due to a pending investigation of Father by the Office of Children and Youth (OCY) and pending criminal charges against Father for criminal harassment.

Ultimately, OCY made no finding of abuse by Father. Furthermore, the criminal harassment charges against Father were dropped. . . .

[On] February 22, 2021, . . . a six month agreed PFA order was entered with no finding of abuse against Father. This order expired on August 22, 2021 without issue. Mother then filed a petition to extend the PFA on August 25, 2021 which was denied.

[On] February 22, 2021, . . . an agreed order was entered in the parties' custody case. This order provided Mother with a six month "civil stay away order" against Father. It directed the parties to use the "Our Family Wizard" (OFW) parenting application to communicate with each other. It further provided for three (3) weekly video calls between Father and [] Children. . . .

*    *    *

On October 11, 2022, Father filed a petition to modify custody. The basis for the modification was Father's completion of the [court-]ordered anger management classes, his belief that the video calls with [Children] were not improving their relationship and that he wanted to play a more active part in their lives after not seeing them in person for over two years.

On December 9, 2022, the parties appeared before the court's custody conciliator, Lenore Myers, Esquire [(the Conciliator)]. The

_____

[2] 23 Pa.C.S. §§ 6101-6122.

Conciliator issued a report that included the following recommendations:

1. That Mother obtain a letter report from [] Children's therapist containing [] Children's diagnosis, prognosis, and plan for treatment including a plan for reunification with Father.

2. [] Children would probably benefit from reunification counseling. Without therapeutic intervention, the relationship between [] Children and Father will never be healed and [] Children will continue to re-experience the past trauma from their previous interactions with Father.

3. Mother and Father should also have a mental health evaluation.

On February 13, 2023, the parties appeared before the undersigned to address the Conciliator's recommendations. Despite the Conciliator's strong recommendation for therapeutic intervention in the report, there had been no effort to move forward on this point in the six (6) weeks since the date of the conciliation [conference]. Additionally, Mother failed to produce a letter from [] Children's therapist, despite the Conciliator's recommendation.

As a result, a temporary order dated February 15, 2023 was entered providing for Father and [] Children to participate in reunification counseling. The goal being that, upon completion of several sessions of therapy with Father and [] Children, issues could be resolved and addressed, and Father and [] Children's relationship could eventually commence to in-person supervised visitation.

The temporary order also provided Father with joint legal custody and directed Mother to provide Father with information about [] Children (*i.e.*, school district, healthcare providers, home address, etc.), directed family counseling for the parents and included more specific provisions on the parents' use of the previously ordered OFW communication application. . . .

\* \* \*

On February 22, 2023, Father filed a petition for contempt based on Mother's failure to comply with any provision of the February 15, 2023 order. . . .

* * *

On March 9, 2023, the counsel and the parties appeared before the undersigned and an order was entered on March 10, 2023[,] directing Mother to comply with the order of February 15, 2023 or face the imposition of potential sanctions pursuant to 23 Pa.C.S. § 5232(g). The petition for contempt was scheduled for a proceeding on April 6, 2023 (which was later rescheduled for April 13, 2023).

Rather than comply with any item in the court's temporary orders of February 15, 2023, and March 10, 2023, Mother instead filed a notice of appeal to the Superior Court.[fn24]

> [fn24] As both orders were temporary, and therefore interlocutory, the Superior Court ultimately quashed Mother's appeal in an order dated April 17, 2023. [*See* Order, 747 EDA 2023, 4/17/23.]

On April 13, 2023, Mother then filed a motion for disqualification of the undersigned.

Trial Ct. Op., 8/31/23, at 1-7 (some footnotes omitted and some formatting altered).

The trial court held a combined custody and contempt hearing on May 25, 2023. At the outset of the hearing, the trial court denied Mother's motion for disqualification. N.T., 5/25/23, at 12. The trial court heard testimony from Father, Mother, and three other witnesses. At the conclusion of the hearing, the trial court held its decision under advisement. *Id.* at 232. On June 9, 2023, the trial court issued an order in which it concluded that Mother was in contempt of the February 15, 2023, and March 10, 2023 orders. Contempt Order, 6/9/23, at 1. The trial court directed Mother to pay Father $500 in counsel fees as sanctions and placed her on probation for six months with a condition that she must strictly comply with the trial court's orders. *Id.*

- 4 -

On July 7, 2023, Mother filed timely notices of appeal and Pa.R.A.P. 1925(a)(2)(i) statements from the June 9, 2023 custody order and the June 9, 2023 contempt order. The trial court subsequently issued a Rule 1925(a) opinion addressing Mother's claims in both appeals.

In her appeal from the trial court's contempt order,[3] Mother raises three issues for our review:

1. Whether the trial court abused its discretion or committed an error of law by issuing the June [9], 2023 order[], whereby Mother was punished for contempt of the court's February 15, 2023 and March 10, 2023 orders, which were created without a hearing, without testimony, or without the receipt of any evidence; whereby, the only trial that took place was on May 25, 2023, from which the trial court's June [9] 2023 orders were conceived, thereby making the February 15, 2023 and March 10, 2023 orders improper?

2. Whether the trial court abused its discretion or committed an error of law by issuing an order on June [9], 2023, whereby Mother is threatened with sanctions and prison for alleged violations of orders issued on February 15, 2023 and March 10, 2023, when said orders were issued without any record trial or record hearing taking place, without any testimony taking place, and without any evidence being presented, included but not limited to the trial court's failure to allow Mother the opportunity to testify or speak on her own behalf, such that Mother was and remains heavily prejudiced by said

_____

[3] As previously noted, Mother separately appealed from the June 9, 2023 custody order. Here, Mother filed the same appellate brief at both appeal docket numbers. Seven of the issues that Mother raised in her appellate brief relate to her appeal from the custody order. Therefore, they are not cognizable in the instant appeal and will be addressed in a separate memorandum. *See, e.g.*, *M.W. v. S.T.*, 196 A.3d 1065, 1069 n.6 (Pa. Super. 2018) (declining to review the grandmother's appeal from denial of her petition to intervene in dependency case where the grandmother only filed a notice of appeal from the order dismissing her complaint for custody).

improper orders, which were issued prematurely and without merit?

3. Whether the trial court abused its discretion or committed an error of law by issuing the June [9], 2023 order[], whereby Mother is placed on probation, threatened with sanctions and prison for alleged violations of orders issued on February 15, 2023 and March 10, 2023 when the trial court first scheduled a contempt hearing on said orders instead of first taking testimony of the respective parties, reviewing evidence, and reviewing the case history which included Father abusing [] Children such that a [PFA] order was entered, prior to issuing said February 15, 2023 and March 10, 2023 orders, respectively?

Mother's Brief at 20-21 (some formatting altered).[4]

Mother argues that the trial court erred by holding her in contempt because the trial court improperly entered its February 15, 2023, and March 10, 2023 orders. *Id.* at 41-47. Specifically, Mother claims that the trial court failed to hear evidence or consider the sixteen factors set forth in 23 Pa.C.S. § 5328(a) relating to the best interests of Children before entering the February 15, 2023 order. *Id.* at 43-44; Mother's Reply Brief at 18-20. Mother contends that the trial court was required to consider the Section 5328(a) best interest factors because the trial court's stated goal was to extend Father's

_____

[4] While Mother identifies three issues for our review in this appeal from the contempt order in her statement of questions presented, the argument section of her brief pertaining to contempt is presented as a single section. *See* Mother's Brief at 41-47. We note that the Pennsylvania Rules of Appellate Procedure require that the argument section of the brief be divided into as many parts as there are questions to be argued. Pa.R.A.P. 2119(a). Failure to do so may result in waiver. *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Mother's failure to comply with the Rules of Appellate Procedure, we find that the defect in Mother's brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. *Id.*

custody time. Mother's Brief at 44. Mother argues that "the trial court should not have made any significant changes to the custody order, even on a temporary basis, without investigating" Father's history of abusive behavior, which is one of the Section 5328(a) factors. *Id.* at 45; *see also* Mother's Reply Brief at 18-20.[5],[6] Mother likewise claims that the March 10, 2023 order is invalid because the trial court issued that order in response to Mother's

---

[5] Mother also notes that the trial court denied her motion for disqualification. Mother's Brief at 26 n.12; Mother's Reply Brief at 20. Mother did not include this issue in her Rule 1925(b) statements. Therefore, this issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

[6] In the statement of the case portion of her brief, Mother includes additional argument in support of her claim that the trial court abused its discretion in entering the February 15, 2023 order. Mother's Brief at 26 & n.12. Particularly, Mother asserts that because the trial court entered that order without first hearing evidence and the terms of "the February 15, 2023 order [were] so extreme, it can only be assumed that the trial court was attempting to circumvent the judicial process, effectively and inappropriately legislating from the bench." *Id.* at 26 n.12.

The allegations of judicial bias and due process violations in Mother's statement of the case violate the Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(b) (stating that "[t]he statement of the case **shall not contain any argument**. It is the responsibility of appellant to present in the statement of the case a **balanced presentation of the history of the proceedings** and the respective contentions of the parties" (emphases added)). Further, Mother has not developed any claims related to judicial bias or due process in the argument section of her brief. Therefore, we will not consider her allegations. Lastly, we note that under Rule 8.2 of the Pennsylvania Rules of Professional Conduct, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Pennsylvania Rule of Professional Conduct 8.2(a).

failure to comply with the February 15, 2023 order. Mother's Brief at 46; **see also** Mother's Reply Brief at 21.[7]

Mother argues that because the trial court failed to consider the Section 5328(a) best interest factors before entering the February 15, 2023 order, she "could not abide by" that order. Mother's Brief at 44. Mother claims that the trial court failed to hear any evidence of Father's history of abuse against Mother and Children before entering the February 15, 2023, and that she feared for the safety of Children. **Id.** at 45. Mother contends that "given the circumstances around the February 15, 2023 order, [Mother's] compliance would have been detrimental to . . . Children, and the contempt order places an undue burden on both [Mother] and . . . Children, especially since the underlying order was inherently flawed and inappropriate at its inception." **Id**. at 46-47 (formatting altered).[8] Therefore, Mother concludes that the trial

---

[7] Mother also argues that the trial court erred by holding her in contempt on March 10, 2023. **See** Mother's Brief at 46. Mother did not include this issue in her Rule 1925(b) statements; therefore, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii). We note that the trial court's March 10, 2023 order did not contain a finding of contempt. **See** Trial Ct. Order, 3/10/23 (directing the parties to comply with the trial court's February 15, 2023 order and advising the parties that failure to comply with that order "**may** subject a party to the imposition of sanctions pursuant to 23 Pa.C.S. § 5323(g)" (emphasis added)). Even if not waived, Mother's claim that the trial court held her in contempt on March 10, 2023 is belied by the record.

[8] In her reply brief, Mother argues that the trial court erred by seeking to punish Mother in its February 15, 2023, March 10, 2023, and June 9, 2023 orders. Mother's Reply Brief at 5-9. A party may not raise new issues in a reply brief for the first time. **See Reginelli v. Boggs**, 181 A.3d 293, 307 n.15 (Pa. 2018). Therefore, to the extent that Mother argues that the trial court abused its discretion by penalizing Mother, that claim is waived.

court erred in holding Mother in contempt of the February 15, 2023 and March 10, 2023 orders.

We review Mother's claim bearing in mind the following principles:

Our standard of review concerning a trial court's contempt findings is very narrow:

This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

*Gross v. Mintz*, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted and formatting altered).

Additionally, this Court has explained:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge. . . .

\* \* \*

This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.

*Harcar v. Harcar*, 982 A.2d 1230, 1235-36 (Pa. Super. 2009) (citations omitted and formatting altered).

This Court has explained that "[a]n order issued by a court with jurisdiction over the subject matter and the person must be obeyed by the

parties until it is reversed by orderly and proper proceedings." ***Hill v.***
***Divecchio***, 625 A.2d 642, 645 (Pa. Super. 1993) (*per curiam*) (citations
omitted).

> To sustain a finding of civil contempt, the complainant must prove
> certain distinct elements by a preponderance of the evidence: (1)
> that the contemnor had notice of the specific order or decree
> which he is alleged to have disobeyed; (2) that the act constituting
> the contemnor's violation was volitional; and (3) that the
> contemnor acted with wrongful intent.  Moreover, a court may
> exercise its civil contempt power to enforce compliance with its
> orders for the benefit of the party in whose favor the order runs
> but not to inflict punishment.  A party must have violated a court
> order to be found in civil contempt.

***Gross***, 284 A.3d at 489 (citations omitted and formatting altered); ***see also***
***Thomas v. Thomas***, 194 A.3d 220, 226 (Pa. Super. 2018) (explaining that
"a mere showing of noncompliance with a court order, or even misconduct, is
never sufficient alone to prove civil contempt" (citation omitted)).

"When making a determination regarding whether a defendant acted
with wrongful intent, the court should use common sense and consider
context, and wrongful intent [that] can be imputed to a defendant by virtue
of the substantial certainty that his [or her] actions will violate the court
order." ***Gross***, 284 A.3d at 492-93 (citation omitted and formatting altered).

Further, "[a] contempt proceeding is collateral to the underlying custody
dispute, and an appeal from an order finding contempt and imposing sanctions
does not give this Court jurisdiction over other issues unrelated to the

contempt." ***O.B. v. C.W.B.***, 1677 WDA 2019, 2020 WL 7233095 at *3 (Pa.

Super. filed Dec. 8, 2020) (unpublished mem.) (citations omitted).[9]

In ***Luminella v. Marcocci***, 814 A.2d 711 (Pa. Super. 2002), the trial

court found the mother in contempt after she withheld custody of the parties'

two youngest daughters from the father in violation of the parties' custody

order. ***Luminella***, 814 A.2d at 714-15. On appeal, the mother argued that

she was not in willful contempt of the custody order because she feared for

her children's safety while they were in the father's custody. ***Id.*** at 719. In

rejecting the mother's claims, this Court explained:

> To accept [the m]other's argument is to accept anarchy. By
> relying on fears for the children's safety as a reason that she could
> not comply with the court order, [the] mother relies on factors she
> should have argued during the development of the custody order
> . . . . [The m]other is not permitted to ignore the order and
> unilaterally institute measures she feels appropriate instead of the
> order.

***Id.***

> Here, the trial court explained:
>
> On February 13, 2023, proceedings were scheduled in front of the
> undersigned concerning Father's petition to modify. At this
> proceeding, the undersigned met with both attorneys in order to
> discuss the possibility of an agreement. The parties were available
> and the attorneys were able to consult with them on issues as
> they were addressed. This proceeding was not on the record as
> pre-trial conferences are often not recorded. During this
> conference, Mother's attorney did not express any disagreement
> to the provisions that were ultimately set forth in the interim order

---

[9] ***See*** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

other than Father's proposed supervisors (which was to be addressed at the February 27th proceeding).

This interim order was put in place to allow the parties to "get the ball rolling" on Father's gradual inclusion back into the family. Mother was to provide Father with some basic information about [] Children; namely their school district and therapists. The February 15th order was to be provided to [] Children's therapist. Father was to begin a gradual course of reunification therapy with a court appointed professional. Furthermore, the parents were to begin family counseling to work on issues that would come up as the parties begin to co-parent again after a long absence of doing so. Mother was to keep Father apprised of his daughter's activities on the "Our Family Wizard" parenting app. Finally, the issue of acceptable supervisors following the therapy was to be addressed at a proceeding on February 27th. Once there was more information from the mental health professionals about Father's progress of reunification into the family, the ability to relist the matter for a hearing in April was provided for in the order.

Mother then proceeded to not comply with a single provision of the February 15th order. Mother did not provide Father with the names of [] Children's school district or therapists (and still refused to do [so] during the court hearing itself). Mother's counsel did not confirm he provided a copy of the order to [] Children's therapists. Mother did not immediately reach out to get the reunification therapy started instead claiming she did not have sufficient funds to pay a retainer to the therapist. Mother did not add [] Children's activities into "Our Family Wizard." Finally, Mother never followed through on identifying a family counselor.

The blatant disregard with this court's order necessitated further proceedings. On March 9, 2023, the undersigned met once again with the attorneys to address the problems that immediately arose following the issuance of the order. At this proceeding, Mother's counsel insisted on a hearing and stated that Mother would not be complying with the February 15th order. This led to the issuance of the March 10, 2023 order which directed Mother to comply with the February 15th order and scheduled a hearing on Father's petition for contempt.

Instead of complying with this court's orders, Mother appealed both [orders] even though they were clearly interlocutory. The appeal only managed to delay Father's reunification process with [] Children even further - as Mother still defiantly refused to

comply with any provisions in the order straight through to the date of the hearing in late May.

In her defense to her non-compliance, Mother stated that she only failed to follow up with the reunification therapist due [to] her inability to afford the $500 retainer. However, there was no evidence that this was disclosed to Father, her counsel o[r] the court for appropriate follow up. In addition, Mother's overall testimony was simply not credible due to her lack of follow up with any provision of the two aforementioned orders. Instead, it was clear that Mother's failure to follow up on anything was in furtherance of her objective to delay Father from once again becoming a meaningful part of [] Children's lives.

Accordingly, in order to preserve the court's authority, it was entirely appropriate to enter a finding of contempt, direct that Mother pay the amount of $500 towards reasonable counsel fees and place Mother on probation for a six month time period to ensure compliance with all of the court orders.

All of the aforementioned sanctions imposed are specifically authorized pursuant to 23 [Pa.C.S.] § 5323(g) (and, notably, were referenced in the court's March 10, 2023 order as possible consequences for failure to comply with the court order).

Trial Ct. Op. at 18-20 (footnote omitted and formatting altered).

Mother argues that trial court erred by holding her in contempt of the February 15, 2023 and March 10, 2023 orders because the trial court improperly entered those orders. However, it is well-established that parties must obey court orders entered by a court with subject matter jurisdiction[10] unless or until the orders are overturned on appeal. *See Hill*, 625 A.2d at 645. Additionally, this Court generally does not review the underlying orders

---

[10] We discern no defect in the trial court's subject matter jurisdiction in this matter. *See generally Weliver v. Ortiz*, 291 A.3d 427, 433 (Pa. Super. 2023); 23 Pa.C.S. §§ 5421, 5422. Further, Mother has not challenged the trial court's subject matter jurisdiction over the underlying custody matter.

- 13 -

that the contemnor violated in an appeal from a finding of contempt. *See* *O.B.*, 2020 WL 7233095 at *3.[11] Therefore, Mother is not entitled to relief on this claim.

Based on our review of the record, we discern no abuse of discretion by the trial court in holding Mother in contempt of the February 15, 2023 and March 10, 2023 orders. *See Gross*, 284 A.3d at 489. Mother does not dispute that she had notice of the February 15, 2023 and March 10, 2023 orders or that her failure to comply with those orders was volitional. *Compare* N.T., 5/25/23, at 163-67 *with Gross*, 284 A.3d at 489.

_____

[11] Even if we were to consider Mother's claims that the trial court erred in entering the February 15, 2023 and March 10, 2023 orders because Mother also appealed from the June 9, 2023 final custody order, we would conclude that Mother's claims are meritless.

As stated previously, Mother filed a notice of appeal from the February 15, 2023 and March 10, 2023 orders, which this Court quashed as interlocutory. *See* Order, 747 EDA 2023, 4/17/23. Under the Child Custody Act, a trial court may enter interim orders which temporarily award or modify legal or physical custody "when it is in the best interest of the child to do so." *E.B. v. D.B.*, 209 A.3d 451, 463 (Pa. Super. 2019) (citation omitted); *see also* 23 Pa.C.S. § 5323(b); Pa.R.C.P. 1915.13. Further, a trial court may enter an interim custody order *sua sponte* and without a hearing. *See E.B.*, 209 A.3d at 464-65. While the trial court must always consider the best interest of the child in custody matters, "**interim** custody orders are not the types of custody awards necessitating a 16-factor, best interests analysis under [23 Pa.C.S. §] 5328(a)." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1283 (Pa. Super. 2019) (emphasis in original). Therefore, the trial court did not abuse its discretion by entering the February 15, 2023 and March 10, 2023 interim custody orders without holding hearings and without making findings related to the Section 5328(a) factors. *See id.*; *E.B.*, 209 A.3d at 463-65; *see also R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019) (explaining that "[t]his Court reviews a custody determination for an abuse of discretion." (citation omitted)).

- 14 -

As noted previously, Mother claims that she did not comply with the February 15, 2023 and March 10, 2023 orders because she had concerns about Children's safety because of Father's history of abuse. On this record, we conclude that Mother's claims are insufficient to justify her undisputed violation of the trial court's February 15, 2023 and March 10, 2023 orders. Accordingly, the trial court was permitted to find that Mother acted with wrongful intent. **See Gross**, 284 A.3d at 492-93 (stating that "wrongful intent can be imputed to a defendant by virtue of the substantial certainty that his [or her] actions will violate the court order" (citation omitted)). Mother explained that she did not comply with the trial court's orders because she believed that the orders were not in Children's best interests. **See** N.T., 5/25/23, at 168 (Mother explained that she did not comply with the trial court's orders because the Children's "safety is my number one priority[]" and "They are my [] Children. . . . I've been with them the whole time. The [trial court j]udge doesn't know them."). This Court has previously condemned such behavior by a parent. **See Luminella**, 814 A.2d at 719 (stating that a parent "is not permitted to ignore the order and unilaterally institute measures [the parent] feels appropriate instead of the order").

Finally, we note that the trial court's credibility determinations are supported by the record. **See Harcar**, 982 A.2d at 1236. For these reasons, we discern no error by the trial court's decision to hold Mother in contempt of its February 15, 2023 and March 10, 2023 orders. For these reasons, we affirm the trial court's June 9, 2023 order holding Mother in contempt.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2024