J-S46028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C.H. | |
| APPEAL OF: C.H. | |
| | No. 406 MDA 2017 |

Appeal from the Order Entered February 13, 2017
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2016-40189

BEFORE:  BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 14, 2017**

C.H. ("Mother") appeals from the February 13, 2017 order awarding primary physical custody of K.C. (born in 2007) and K.C. (born in 2009) (together "Children") to T.R. ("Paternal Grandmother").[1]  We affirm.

The relevant factual background and procedural history of this case are as follows.  From February to October 2016, Paternal Grandmother had primary physical custody of the Children.  N.T., 2/10/17, at 58-59; N.T., 12/14/17, at 3.  From October 2016 until December 9, 2016, Mother had primary physical custody of the Children subject to partial physical custody by Paternal Grandmother.  N.T., 12/14/16, at 3.  Mother's custody was conditioned on her obtaining a protection from abuse order ("PFA")

---

[1] We are using the parties' initials so as to protect the Children's identities. We have amended the caption accordingly.

* Former Justice specially assigned to the Superior Court

against her paramour, J.S., and the Children having no contact with him.[2]
*Id.* During the period of Mother's primary custody, the Children had to change school districts and were to attend therapy at the Aaron Center. N.T., 2/6/17, at 55-57. The record shows that the Children, under Mother's care, had unexcused absences from school, were discharged from the Aaron Center for failure to make appointments, and were infected with head lice. N.T., 2/6/17, at 13, 15, and 37.

On December 9, 2016, Mother and the Children were staying in J.D.'s trailer home.[3] N.T., 12/14/16, at 10-11. Around 12:30 a.m., the police were called regarding the welfare of other children in the home. N.T., 1/5/17, at 5. Officer Anthony Mercado testified that he and his partner entered the living room of the trailer home and the Children were watching a movie with two young boys. *Id.* The officers left and roughly 30 minutes later, Officer Mercado received a message from dispatch that J.D. requested that he and his partner return to the trailer home to take custody of the two young boys, whose mother J.D. was unable to locate. *Id.* at 7. Officer Mercado testified that he received information that J.S. had been present at the trailer and the officer questioned Mother and J.D. regarding his presence. N.T., 1/5/17, at 11-12. Mother indicated that J.S. had left. *Id.* J.D. testified that he saw J.S. in the trailer park that day, but J.S. had never

---

[2] The Children feared J.S. and had witnessed drug activity in his presence. N.T., 2/10/17, at 78; N.T., 2/6/17, at 13.

[3] J.D. is Mother's friend.

been inside the trailer. N.T., 2/10/17, at 18, 20. One of the Children stated that J.S. lived in the trailer. N.T., 2/6/17, at 6.

It was determined that both J.D. and Mother had outstanding warrants for their arrest. N.T., 1/5/17, at 9. The officers took both into custody and arrangements were made for the Children. N.T., 2/10/17, at 37. Mother wanted the Children to stay with her mother ("Maternal Grandmother") in a nearby trailer until she was released from incarceration. N.T. 12/14/16, at 6. Maternal Grandmother was determined to be an unfit custodian, so Mother requested the Office of Youth and Family Services ("OYFS") contact Paternal Grandmother. *Id.*

Later that day, Paternal Grandmother filed a petition for emergency special relief to take custody of the Children. After hearings on December 14, 2016, January 5, 2017, February 6, 2017, and February 10, 2017, the trial court awarded shared legal custody of the Children to Paternal Grandmother and Mother, and awarded primary physical custody to Paternal Grandmother. The order allowed Mother partial physical custody at times to be agreed upon by the parties. The order further directed that the Children should have no contact with J.S. This timely appeal followed.[4]

Mother presents two issues for our review:

---

[4] Mother filed her concise statement of errors complained of on appeal contemporaneously with her notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i), (b). On April 4, 2017, the trial court issued its Rule 1925(a) opinion. Both of Mother's issues were included in her concise statement.

1. Whether the [t]rial [c]ourt erred [in concluding there was sufficient] evidence and testimony [to] support[] its determination that [Paternal] Grandmother is entitled to primary physical custody of the [C]hildren?

2. Whether the decision of the [t]rial [c]ourt violates Mother's substantive due process rights under the [Fourteenth] Amendment of the United States Constitution regarding her ability to care, control, raise and have custody of her children?

Mother's Brief at 3.

In her first issue, Mother argues that the trial court erred in awarding custody to Paternal Grandmother. It is well-settled that,

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa. Super. 2012), *quoting*, **A.D. v. M.A.B.**, 989 A.2d 32, 35–36 (Pa. Super. 2010) (internal citations omitted).

It is axiomatic that the primary concern in any custody dispute is the best interest of the child. **M.G. v. L.D.**, 155 A.3d 1083, 1091 (Pa. Super. 2017), *appeal denied*, 2017 WL 2001313 (Pa. May 12, 2017). "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to

- 4 -

the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S.A. § 5327(b).

> Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*Jordan v. Jackson*, 876 A.2d 443, 449 (Pa. Super. 2005) (internal quotations and citations omitted).

"[T]he Custody Act provides an enumerated list of [16] factors a trial court must consider in determining the best interests of the child when awarding any form of custody[.]" *C.A.J. v. D.S.M.*, 136 A.3d 504, 509 (Pa. Super. 2016) (internal alteration, ellipsis, and citation omitted).[5] Those factors are:

> (1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

---

[5] In her brief, Mother argues that requiring trial courts to consider the 16 best interest factors violates the Fourteenth Amendment. *See* Mother's Brief at 16. This argument is waived because Mother failed to notify the Attorney General of Pennsylvania of her facial challenge to the constitutionality of the statute. Pa.R.A.P. 521(a); *Kepple v. Fairman Drilling Co.*, 615 A.2d 1298, 1303 (Pa. 1992). As such, we proceed with the analysis required by the statute and case law.

(2.1)   The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)   The parental duties performed by each party on behalf of the child.

(4)   The need for stability and continuity in the child's education, family life and community life.

(5)   The availability of extended family.

(6)   The child's sibling relationships.

(7)   The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)   Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)   Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)   The proximity of the residences of the parties.

(12)   Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)   The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)   The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Factors related to the safety of the Children (such as factor two), are to receive weighted consideration. *Id.*

Preliminarily, Mother argues that the trial court applied the incorrect legal standard. She argues that the trial court failed to presume that Mother should be awarded custody, as is required by section 5327(b). This argument is without merit. The trial court quoted section 5327(b) and recognized that Paternal Grandmother was required to overcome the presumption by clear and convincing evidence. *See* Trial Court Opinion, 4/4/17, at 8-9. Thus, the trial court applied the correct legal standard.

Turning to the trial court's weighing of the custody factors, it found that factors one, three, eight, nine, eleven, thirteen, fourteen, and fifteen were neutral. *Id.* at 4-8. However, it found factors two, four, five, six, seven, ten, and twelve weighed in favor of Paternal Grandmother. *Id.* at 4-8.

Mother challenges the trial court's factual finding with respect to the second factor, *i.e.*, whether J.S. provides a continued risk of harm towards Children. Mother relies upon this Court's decision in *Luminella v. Marchocci*, 814 A.2d 711 (Pa. Super. 2002), in arguing that the Children's fear of J.S. is insufficient to prove that he poses a continued risk of harm towards them. Mother is correct that *Luminella* requires a judicial inquiry

into the parties' relationship to determine if a child's fear is founded. *Id.* at 718.

In this case, the trial court determined the Children's fear was founded. The trial court interviewed the Children in chambers regarding their relationship with J.S., at which time Mother agreed to keep him away from the Children. N.T., 2/10/17, at 78. The Children reported witnessing J.S. "smoking things out of pipes." N.T., 2/6/17, at 13. Mother conceded in her testimony that she needed a PFA from J.S., but hoped that he would "get help" and she could give him a second chance. Id. at 44-46.

The trial court also gave substantial weight to factors four, five, and six. These factors refer to stability and familial ties. If Mother were to receive primary physical custody, the Children would have to, once again, change school districts. The record established that while in Mother's care, the Children had unexcused absences from school and were discharged from therapy at the Aaron Center for failure to keep appointments. The Children's attendance at school and counseling is better while in the care of Paternal Grandmother. N.T., 2/6/17, at 42-43. Moreover, the Children live with their brother and paternal great-grandmother when staying with Paternal Grandmother, so they have strong family connections. *Id.* at 27.

Factor ten considers which party is better able to tend to the daily needs of the Children. This weighs in favor of Paternal Grandmother. As stated above, the Children's attendance at school and counseling is better

when they are in the custody of Paternal Grandmother. Furthermore, while in Mother's custody, the children were infected with head lice. Paternal Grandmother has demonstrated that she is best able to tend to the needs of the Children.

Factor twelve refers to the ability of the guardians to care for and make appropriate childcare arrangements for the Children. Mother works overnight and would leave the Children with her sister during that time. N.T., 2/10/17, at 41. However, Mother's sister already cares for five children, and may live with Maternal Grandmother, who is to have no unsupervised contact with the Children. *Id.* at 57-58.

Mother does not challenge the trial court's factual findings with respect to these seven factors. *See* Mother's Brief at 20. Instead, she argues that these factors are insufficient to overcome the presumption that Mother should maintain custody of the Children by clear and convincing evidence. We disagree. The trial court found Paternal Grandmother provided evidence "weighty enough to bring the scale up to even, and down on [her] side." *Jordan*, 876 A.2d at 449. We conclude that trial court did not err in reaching this legal conclusion. Mother is essentially asking us to reweigh this evidence. As our Supreme Court has explained, "appellate court[s] may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion." *T.B. v. L.R.M.*, 786 A.2d 913, 916 (Pa. 2001). As

such, we conclude that the trial court did not err in finding that Paternal Grandmother rebutted the section 5327(b) presumption by clear and convincing evidence.

In her second issue, Mother contends that the trial court's decision violates her Fourteenth Amendment due process rights to the care, custody, and control of her children. In support of this position, Mother cites **Troxel v. Granville**, 530 U.S. 57 (2000). In **Troxel**, the Supreme Court of the United States struck down a Washington statute that gave "any person" standing to petition for visitation with a child and gave no deference to the wishes of a fit parent regarding visitation with third parties. **Id.** at 62-63. The Supreme Court explained the Washington court's "order was not founded on any special factors that might justify the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters." **Id.** at 68.

Section 5327(b) codifies a statutory presumption that, unless rebutted by clear and convincing evidence, parents should be awarded custody over third parties. In other words, section 5327(b) requires special factors be present in order to interfere with a parent's fundamental right to make decisions concerning his or her child(ren). As a committee of the Family Law Section of the American Bar Association has stated, section 5327(b) serves as a model for how state legislatures can address the requirements set forth in **Troxel**. **See** Model Third-Party Child Custody and Visitation Act § 5 cmt

(2012). In this case, the trial court carefully considered this presumption and determined that Paternal Grandmother rebutted it with clear and convincing evidence. Therefore, the trial court did not violate Mother's Fourteenth Amendment due process rights as interpreted by *Troxel*.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2017