J-A04003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LISA JONES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TORREY JONES | : | No. 1206 MDA 2025 |

Appeal from the Order Entered August 6, 2025
In the Court of Common Pleas of York County
Civil Division at No(s):  2023-FC-001338-03

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:　　　**FILED: MARCH 30, 2026**

Lisa Schmidt, formerly Lisa Jones ("Mother"), appeals *pro se* from the order of the Court of Common Pleas of York County finding her in contempt of the custody order. Mother argues that the trial court abused its discretion in finding her in contempt and awarding Torrey Jones ("Father") attorney's fees. We affirm.

We glean the following facts from the certified record. Mother and Father have four children together: L.J. (born 2008), K.J. (born 2011), O.J. (born 2012), and G.J. (born 2016) (collectively, "the Children").[1] On November 4, 2024, the court approved a stipulated custody order where Mother had sole legal custody and primary physical custody of O.J. and G.J., and Father had

---

[1] Custody of K.J. was not in dispute during these proceedings. Therefore, any reference to "the Children" in this memorandum excludes K.J.

sole legal custody and primary physical custody of L.J. and K.J. Under the agreement, Father had partial physical custody of O.J. and G.J., and Mother had partial physical custody of L.J. and K.J. on alternate weekends from Friday evening to Sunday evening.

Father filed a contempt petition on April 24, 2025, and an amended petition on June 19, 2025, alleging that Mother had been wrongfully withholding custody.

According to Father's petition, on April 13, 2025, Father agreed to allow L.J. to stay in Mother's custody until Thursday April 17, 2025. Two days later, Father was visited by a Lebanon County Children and Youth Services ("CYS") employee regarding allegations of sexual abuse of G.J.[2] The next day, Mother messaged Father that due to the pending investigation she would not allow Father to exercise his custody of O.J. and G.J. and she would not be returning L.J. to his custody.

Mother and Father exchanged messages that they planned on attending one of the Children's football games on Saturday April 19, 2025. Father informed Mother that he intended on retaining custody of L.J. and exercising his visitation rights for O.J. and G.J. after the game. Mother insisted that Father first have a recorded conversation with Mother and her now-husband, Bobby Schmidt ("Stepfather"), which Father rejected. Father did not maintain

---

[2] CYS later determined that the allegations were unfounded.

custody after the football game. Over the next couple days, Mother and Father exchanged messages negotiating the terms of exchanging custody. Father maintained that he would not meet with Stepfather or have a recorded conversation. Ultimately, Father did not retain custody.

On April 23, 2025, Mother filed a protection from abuse ("PFA") petition against Father on behalf of G.J., claiming sexual abuse. A temporary PFA order was granted and after multiple continuances, a hearing was held on Friday May 23, 2025. At the conclusion of the hearing, the PFA petition was denied. The parties arranged to exchange custody later that evening at a McDonald's parking lot.

At the McDonald's parking lot,

> there was initial resistance to the Children getting out of the car for the exchange. Stepfather got out of the car and evidently attempted to demonstrate to Father that the Children were refusing to be exchanged. L.J. ultimately got out of the car and attacked Father, triggering a general melee involving the Children, Father, and Stepfather to varying degrees. Father had to intervene and stop a fight between two of the Children.

Trial Court Opinion, 9/22/25, at 5 (some capitalization provided).

The Derry Township Police responded to the scene. Afterwards, Stepfather filed a PFA petition against Father on behalf of L.J., O.J., and G.J. and a temporary PFA order was granted on May 28, 2025. Further, Dauphin County Social Services for Children and Youth opened an investigation.

A hearing for Father's contempt petition against Mother was held on August 1, 2025. At the hearing, Mother represented herself *pro se*. Mother,

- 3 -

Father, and Stepfather testified. Mother attempted to call L.J. as a witness to testify to "May 23rd and why he does not want to go to his father's." N.T., 8/1/25, at 105. The trial court did not allow L.J. to testify stating "[t]hat's custody trial stuff[, t]hat's not contempt stuff." *Id.* at 106.

At the conclusion of the hearing,

> [t]he court made a finding of contempt as to Mother. The court ordered that Mother accommodate seven days of make-up custody time for Father as it relates to L.J. and O.J. The court ordered one day of make-up time for G.J. The court established new custody exchange protocols limiting the parties who may be present and limiting the involvement of [S]tepfather in parenting. The court also ordered that Mother pay $2,500.00 in attorney fees to Father's attorney.

Trial Court Opinion, 9/22/25, at 2.[3, 4]

Mother timely appealed *pro se*. Mother and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. *See* Pa.R.A.P. 1925(a)-(b).

---

[3] The trial court also specified that,

> I find by preponderance of the evidence that there was contempt, that there was knowledge of the contents of the Order, that the Order was intentionally violated, and that . . . it was a material violation.

N.T., 8/1/25, at 123.

[4] Although the trial court entered the contempt order on the record at the conclusion of the hearing, "the date on which the clerk ma[de] the notation in the docket that written notice of entry of the order ha[d] been given" was August 6, 2025. Pa.R.A.P. 108(c). Therefore, we consider August 6, 2025, to be the date the order was entered. *See* Pa.R.A.P. 108(a)(1), (c).

At the outset, we must address which issues have been properly preserved for our review. In her concise statement of errors complained of on appeal, Mother purported to raise thirteen issues. **See** Concise Statement, 9/22/25. The "Statement of Questions Involved" section of her brief contains seven issues. **See** Appellant's Brief, at 4-6 (pagination added). However, the argument section of her brief only contains two argument headings with three subheadings under one heading. **See id.** at 9-12 (pagination added).

Issues raised in her concise statement that are not set forth and developed in the argument section of her brief are considered waived for lack of development. **See Interest of D.C.**, 263 A.3d 326, 336 (Pa. Super. 2021); Pa.R.A.P. 2119(a). Further, at least two arguments raised in her argument section were not raised in her concise statement and therefore are waived for failing to preserve the issue.[5] **See** Pa.R.A.P. 1925(a)(4)(vii).

With that in mind, the properly preserved issues that Mother raises on appeal are that the trial court abused its discretion in finding her in contempt of the custody order because the custody order, specifically paragraph 20, was ambiguous, and the trial court failed to properly consider the welfare of the Children. **See** Appellant's Brief, at 10-12 (pagination added). Mother also

---

[5] The arguments that Mother raises for the first time in her brief are that the trial court abused its discretion in finding her in contempt because she did not willfully disobey the custody order and that the trial court abused its discretion in awarding make up custody days. **See** Appellant's Brief, at 10, 12-13 (pagination added).

claims that the attorney's fees award was excessive. ***See id.*** at 12-14 (pagination added).

"On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion." ***Thomas v. Thomas***, 194 A.3d 220, 225 (Pa. Super. 2018) (citation omitted). "We review custody contempt orders for an abuse of discretion." ***E.K. v. J.R.A.***, 237 A.3d 509, 526 (Pa. Super. 2020) (citation omitted). "A trial court abuses its discretion in entering a custody contempt order if it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure." ***Id.*** (citation omitted). We defer to the credibility determinations of the trial court. ***See Harcar v. Harcar***, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citation omitted).

"To be in contempt, a party must have violated a court Order, and the complaining party must satisfy that burden by a preponderance of the evidence." ***Id.*** at 1234 (citation omitted). "[T]he complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***J.M. v. K.W.***, 164 A.3d 1260, 1264 (Pa. Super. 2017) (citation and brackets omitted).

Mother argues that the trial court abused its discretion in finding her in contempt because the custody order, specifically paragraph 20, was

ambiguous, and the trial court failed to properly consider the welfare of the Children. **See** Appellant's Brief, at 8-12 (pagination added).

Paragraph 20 of the stipulated custody agreement states,

**20. WELFARE OF THE CHILD TO BE CONSIDERED:**

The welfare and convenience of the subject minor children shall be the prime consideration of the parties in any application of the provisions of this Child Custody Stipulation and Agreement. Both parents are directed to listen carefully and consider the wishes of the subject minor children in addressing the custodial schedule, any changes to the schedule, and any other parenting issues.

Custody Agreement, 11/4/24, at ¶ 20.

The trial court explained its consideration of the welfare of the Children.

[T]he court did not conclude that Father harmed the Children. It was Father who initially suffered an unprovoked assault by L.J. at the custody exchange. He later tried to break up a fight between two of the Children. **The court did not conclude that he was a risk to the Children**. Judge Snyder dismissed the PFA earlier that day, so that was not a finding of abuse. The pending children and youth matter had not resulted in a finding by the date of the hearing in this matter. The PFA of [Stepfather] had not reached a decision in a final hearing by the date of this hearing. The credible testimony of Father was that Mother and [Stepfather] engaged in escalations immediately prior to L.J. assaulting Father by giving him the finger and getting out of the car and using invective. **The court was not persuaded that Father presented a risk of harm to the Children**. The court understands that Mother has concerns, but the court does not share those concerns based on the evidence it has been presented with.

Trial Court Opinion, 9/30/25, at 12 (emphasis and some capitalization added).

The trial court found that during the periods when there was no active CYS investigation or a temporary PFA order, Father posed no risk of harm to the Children. Based on our review of the record, we discern no abuse of

discretion with the trial court's findings. Paragraph 20 is not ambiguous about Mother's obligation to comply with the custody order. Mother's concerns for the Children did not justify unilaterally disobeying the custody order. *See Luminella v. Marcocci*, 814 A.2d 711, 719 (Pa. Super. 2002). Mother could have addressed her concerns by filing a modification petition.[6] *See* 23 Pa.C.S.A. § 5338. Therefore, her argument is without merit.

In her final issue Mother challenges the trial court's award of attorney's fees. "The imposition of counsel fees can serve as a sanction upon a finding of civil contempt." *Thomas*, 194 A.3d at 226 (citations omitted). "Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order." *Rhoades v. Pryce*, 874 A.2d 148, 152 (Pa. Super. 2005) (*en banc*) (citation omitted). "Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive." *Id.* (citation omitted). "We review an award of contempt sanctions in the form of

---

[6] We note that paragraph 22 of the custody order addressed modifying the custody agreement. It stated that if the parties cannot agree to a modification they may not "follow their own ideas as to what they think the arrangements should be. Absent an agreement to change the terms of the agreement, these terms will determine the rights of each party for custody of the subject minor children until further agreement or [o]rder of [c]ourt." Custody Agreement, 11/4/24, at ¶ 22.

counsel fees for an abuse of discretion." **Thomas**, 194 A.3d at 226 (citation omitted).

Mother argues that the award of attorney's fees was an inappropriate sanction because the record does not support the trial court's contempt finding. **See** Appellant's Brief at 12-14 (pagination added). This argument amounts to another challenge to the trial court's contempt decision. Mother does not set forth a separate argument as to how the trial court abused its discretion in awarding Father attorney's fees.

The trial court found Mother in contempt of the custody order, and it acted within its discretion in awarding Father attorney's fees to help remedy Mother's contempt.[7] Therefore, Mother is not entitled to relief.

Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/30/2026

_____

[7] The trial court also explained that the amount of attorney's fees was based on a "reasonable accounting" provided by Father and its own experience such that "[t]he fees awarded were ordinary and reasonable." Trial Court Opinion, 9/30/25, at 13.