J-A14029-19

2019 PA Super 230

| IN THE INTEREST OF: D.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.R. AND J.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 311 WDA 2019 |

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  6 JM 2018

| IN THE INTEREST OF: A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: D.R. AND J.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 312 WDA 2019 |

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  No. 7 JM 2018

| IN THE INTEREST OF: G.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: D.R. AND J.R. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 313 WDA 2019 |

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  8 JM 2018

| IN THE INTEREST OF: R.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |

APPEAL OF: D.R. AND J.R. :
:
:
:
:
: No. 314 WDA 2019

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  No. 9 JM 2018

IN THE INTEREST OF: C.R., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
:
APPEAL OF: D.R. AND J.R. :
:
:
:
:
: No. 315 WDA 2019

Appeal from the Order Entered February 1, 2019
In the Court of Common Pleas of Greene County Domestic Relations at
No(s):  10 JM 2018

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY KUNSELMAN, J.: **FILED JULY 26, 2019**

D.R. (Father) and J.R. (Mother) appeal the court's order compelling their cooperation with Fayette County Children and Youth Services Agency (Fayette CYS) to submit to a home inspection, as well as for Father to take a drug test, pursuant to the Child Protective Services Law (CPSL), 23 Pa.C.S.A. §§ 6301, *et seq.*, and corresponding regulations.  The parents argue,[1] *inter alia*, that the order violated their state and federal constitutional rights against

_____

[1] Father, an attorney, has represented himself and Mother throughout these proceedings.

- 2 -

unreasonable searches and seizures. After careful consideration, we agree and vacate the trial court's order.

The pertinent history discloses the following:

In January 2019, Fayette CYS presented a "motion to compel cooperation with [General Protective Services] assessment" before the Greene County Court of Common Pleas.[2] Fayette CYS averred that it received three separate reports of Father being under the influence of an unknown substance. In one of those instances, Father was accompanied by one of his five children. In the third report, an allegation was made that Father abused Mother, but that criminal charges were dismissed because she refused to testify. Fayette CYS interviewed all the children and sought judicial records of the purported domestic violence. The agency could not corroborate the allegations. Fayette CYS requested that the parents submit to a home inspection and that Father submit to a drug test. The parents refused.

The parents objected to the motion to compel, arguing that Fayette CYS should have filed a verified petition. They also alleged that they lacked notice and an opportunity to be heard. The parents' contended further that the judge assigned to his case should recuse, because Father had active cases before

_____

[2]As a part of Father's private practice, he represented parents who are under investigation by the Greene County Children and Youth Services Agency (Greene CYS). Greene CYS determined that it had a conflict of interest in this matter and so Fayette CYS assumed the responsibility of investigating the allegations.

the court. The court set the matter for a hearing ten days later, but denied the parents' request to recuse. After a hearing, the court ordered the parents to comply with the home inspection and ordered Father to submit to a drug test via an observable urine screen.[3] The court furthered ordered the parents to "cooperate" with Fayette CYS and threatened sanctions if they did not. The parents filed this timely appeal. They raised ten issues:

1. Did the court err by entertaining [Fayette CYS]'s unverified motion to compel when no abuse or neglect had been alleged when the law requires the agency to file a verified petition when requesting court action on abuse allegations?

2. Did the court err by granting [Fayette CYS]'s motion when the motion was not presented to the court or served on [the parents] more than 60 days after the allegations or reports were made?

3. Did the court err by finding that the allegations against [the parents] amounted to actual reports of child abuse and that probable cause existed to enter the home when the agency freely admitted no abuse was alleged?

4. Did the court err in refusing to apply the "probable cause" standard to [Fayette CYS]'s motion and thereafter finding that [Fayette CYS]'s request was not of the same standard as a search warrant?

5. Does [Fayette CYS]'s motion and the court's order for entry into the home, the body and compliance with [Fayette CYS] amount to an illegal search and seizure under the state and federal constitutions?

_____

[3] An "observable" urine screen necessitates that the administrator of the drug test watch the urine exit the penis to ensure the integrity of the sample.

6. Did the court err and/or violate appellant Mother's constitutional rights by issuing an order against her when no allegations were made against Mother?

7. Did the court violate [the parents'] constitutional rights by issuing an order against [the parents] for sanctions if they did not comply with said order?

8. Does the CPSL allow for urine drug testing of private citizens and if so does observable urine testing violate the [Father's] constitutional rights?

9. Did the court err denying the motion to recuse itself and the motion to remove the case from the jurisdiction?

10.   Did the court err prohibiting [Father] from asking if he reporting sources were [CYS] employees when the CPSL mandates CPSL reports from employees must be made within 24 hours of the alleged incident?

Parents' Brief at 12-14 (excess capitalization omitted).

First, we briefly address the issue of mootness. At oral argument, Father indicated that the parents had not complied with the court's order to cooperate with Fayette CYS. From what we can discern, the trial court has not enforced its order while the matter was on appeal. **See** Pa.R.A.P. 1701(b)(2). Regardless of whether the parents complied with the order, however, we conclude that the matter would still be properly before us. In **In re Petition to Compel Cooperation with Child Abuse Investigation**, a near carbon copy of the instant matter and one we discuss in great detail **infra**, we explained that these same issues were clearly capable of repetition while evading appellate review. 875 A.2d 365, 370 (Pa. Super. 2005). We may properly review the instant case.

- 5 -

Next, we must determine whether the parents' issues are preserved for our review. Pennsylvania courts have repeatedly held that an appellant waives all matters for review where he identifies an outrageous number of issues in the concise statement. *See Jones v. Jones*, 878 A.2d 86 (Pa. Super. 2005) (holding that a seven-page, twenty-nine issue statement resulted in waiver). This Court may also find waiver where a concise statement is too vague. *See In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.") (citation omitted).

Here, the parents were obligated to file a concise statement of errors, pursuant to Pa.R.A.P. 1925(a)(2). Although Rule 1925(b) dictates that the number of issues raised in a concise statement will not be grounds for finding waiver, this principle applies only "[w]here non-redundant, non-frivolous issues are set forth in an appropriately concise manner[.]" Pa.R.A.P. 1925(b)(4)(iv); *see also Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004) (holding that by "raising an outrageous number of issues" in a Rule 1925 statement, an appellant impedes the trial court's ability to prepare an opinion addressing the issues on appeal, thereby effectively precluding appellate review).

In their concise statement, the parents listed 25 numbered paragraphs alleging various improprieties. The trial court, impeded by the deluge or perhaps cognizant of our dim view of rambling concise statements, chose not

to discuss the enumerated errors individually. Instead, the court reviewed the transcript and articulated generally the reasons for its decision.

Based on our review, we conclude that Father has preserved four primary issues:

> A. Whether the trial court erred in denying the parents' motion to recuse?
>
> B. Whether CYS's motion to compel cooperation was procedurally appropriate?
>
> C. Whether the trial court erred in ordering the parents' to submit to a home inspection?
>
> D. Whether the trial court erred in ordering Father to submit to a urine test?

We begin with Father's contention that the Hon. Gerald R. Solomon, the senior judge assigned to the case, should have recused.[4] Usually the prudent

---

[4] At first glance, this issue appears untimely. Father presented the motion to recuse at the first court date, on January 18, 2019. By order, signed and docketed on the same date, the court denied the request. The parents waited to appeal this decision until after the resolution of the substantive issues in the motion to compel. Because this case is designated as a Children's Fast Track, Father filed contemporaneously the notice of appeal and concise statement on February 20, 2019. Regarding the recusal issue, this timeline puts the parents beyond the thirty days allowable under Pa.R.A.P. 903(a).

However, this Court has held that a pre-trial motion seeking to recuse a judge from further proceedings is not a final order. *See Krieg v. Krieg*, 743 A.2d 509, 511 (Pa. Super. 1999). In *Krieg*, we treated a motion to recuse as a pre-trial motion, because the appellant-father sought the judge's recusal in anticipation of further custody proceedings. *See id*. at n.3. In that context, we concluded that a motion to recuse may be reviewed only after an underlying action is filed and has been decided. *Id.* Here, we find the situation akin to that in *Krieg*. We conclude that the court's denial of Father's motion

- 7 -

practice of this Court is to avoid commenting on all of an appellant's issues if one issue constitutes reversible error. *See, e.g., Landis v. Landis*, 869 A.2d 1003 (Pa. Super. 2005). Because we assume that this case will be remanded to the same judge, we conclude that the circumstances of this case do not warrant such a recusal.

Our scope and standard of review regarding the subject is settled:

> The denial of a motion to recuse is preserved as an assignment of error that can be raised on appeal following the conclusion of the case. We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*In re A.D.*, 93 A.3d 888, 893 (Pa. Super. 2014) (citations and quotations omitted).

In the instant matter, Judge Solomon was not the original judge assigned to the case. Given Father's practice in Greene County, both of the judges that comprise the bench of the Greene County Court of Common Pleas had recused themselves. The matter was submitted to the Administrative

_____

did not become a final, appealable order until the motion to compel had been adjudicated. The issue is properly before us.

Office of Pennsylvania Courts, who assigned Judge Solomon. In his brief, Father argues that the case should have been transferred to Allegheny County, but no such request was formally made. Father reasons that Judge Solomon should have recused, because Judge Solomon was the only judge to ever hold him in contempt.

Judge Solomon told Father that his mere knowledge of Father as a practitioner would not prevent him from being impartial:

> [I]n my years on the bench, if every attorney that I ruled against would ask to recuse me from a case, I would have no cases to hear. I mean, I've ruled against everyone. I judge each case on the basis of what's presented to me, the facts of the case and the law…. But I certainly have no animosity toward you. I don't know you personally, I come to Greene County as a senior judge when I'm asked to handle matters that cannot be handled by the two judges that are seated here. I will certainly treat you as I would any counsel before me or any individual before me with utmost fairness, and I would follow the law.

N.T., 1/28/19, at 5-6.

In the written word, Judge Solomon's explanation is particularly eloquent and thoughtful. The parents cannot communicate a reason why we should not take it at face value. We conclude that the court did not abuse its discretion when it denied the parents' motion to recuse.

Next, we determine whether Fayette CYS followed proper procedure when seeking the parents' compliance. The parents contend that the trial court permitted erroneous procedure when it allowed Fayette CYS to proceed on an unverified **motion**, as opposed to a proper petition under 55 Pa. Code

§ 3490.73 of the CPSL. Fayette CYS argues that the matter was properly initiated by a motion under Pa.R.C.P. 208.1, which does not require verification. We disagree with Fayette CYS and agree with the parents; a motion is an improper mechanism to initiate an action of this kind.

The CPSL charges county agencies with investigating each report of suspected child abuse. *See* 23 Pa.C.S.A. § 6368(a). Our Legislature has expressly authorized the Department of Public Welfare (DPW) to adopt whatever regulations are necessary to implement the CPSL. *See* 23 Pa.C.S.A. § 6348. Title 55 of the Pennsylvania Administrative Code, Section 3490.73, "Petitioning the court," provides:

> The county agency ***shall petition*** the court if one of the following applies:
>
> ….
>
> (2) A subject of the report of suspected child abuse refuses to cooperate with the county agency in an investigation, and the county agency is unable to determine whether the child is at risk.

55 Pa. Code § 3490.73(2) (emphasis added).

CYS should not have initiated this action by motion, and the court should not have allowed it. However, we cannot ignore the fact that the trial court granted parents' request for a ten-day continuance and provided them notice and an opportunity to be heard, which is not necessarily required before the court could have forced the parents' compliance.

In **In re Petition to Compel**, **supra**, this Court held that the issuance of an *ex parte* order granting an agency's petition to compel did not violate the appellants' due process rights. 875 A.2d at 379. "Particularly in the arena of child abuse/neglect and assuming probable cause for a search did exist, it would be unreasonable to direct the courts to give notice and schedule a hearing in every instance." **Id.**

In other words, had Fayette CYS followed proper protocol, the agency could have theoretically obtained an order forcing the parents to comply without affording them an opportunity to be heard. Whatever harm could have befallen the parents by the motion's defective posture was substantively cured by the court when it allowed the parents to contest Fayette CYS's position. Although the court and Fayette CYS should have abided by the procedure set forth in the CPSL and corresponding regulations, we do not find that the court abused its discretion by entertaining the unverified motion, because the court took sworn testimony prior to granting the request of Fayette CYS.

Next, we turn to the crux of the parents' appeal. They contend that CYS lacked probable cause to conduct an inspection of their home, and that the court's order compelling them to comply with the inspection was a violation of their rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. We agree.

"The Fourth Amendment to the Constitution of the United States protects people from unreasonable government intrusions into their legitimate expectations of privacy. Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." *Id.* at 373 (citations and quotation marks omitted). The Fourth Amendment to the United States Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Article I, Section 8 of the Pennsylvania Constitution provides:

> **§ 8. Security from searches and seizures**
>
> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8.

"The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal Constitution." *In re Petition to Compel*, 875 A.2d at 373-374 (citing *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997), and *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991)).

In ***In re Petition to Compel***, which was a matter of first impression, this Court concluded that a CYS inspection of a home is subject to the limitations of state and federal search and seizure jurisprudence. ***Id.*** at 374. We determined that the authorization of a home inspection was constitutional so long as CYS had probable cause:

> Certainly it is possible to read the [Department of Public Welfare's] regulations in a manner consistent with the Fourth Amendment. [CYS] is required to visit the child's home at least once during its investigation of child abuse allegations; if a home visit is refused and [CYS] is unable to determine whether conditions in the home present a risk to the child, it must petition the court. Nowhere in the CPSL or Title 55 of the Code does it state that the court must grant [CYS]'s petition regardless of the factual circumstances. As we interpret the statute and agency regulations, [CYS] must file a verified petition ***alleging facts amounting to probable cause to believe that an act of child abuse or neglect has occurred and evidence relating to such abuse will be found in the home***.

***Id.*** at 377. (Emphasis added).

In ***In re Petition to Compel*** we determined that the local CYS did not allege facts sufficient for a finding of probable cause necessary to compel the parents' cooperation.  In that case, the agency received a ChildLine[5] referral

_____

[5] ChildLine is "[a]n organizational unit of the Department [of Human Services of the Commonwealth] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under section 6332 of the CPSL (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. In addition, it also receives reports of student abuse under Subchapter C.1 of the CPSL (relating to students in public and private

of possible child abuse and medical neglect. The agency contacted the parents and several medical facilities which provided treatment to the child. The agency also sought a home inspection, but the parents refused. The agency then obtained an *ex parte* order compelling the parents' to allow the agency to conduct a home inspection. This Court ruled that the order ran afoul of the parents' rights against unreasonable searches and seizures, because the agency lacked probable cause:

> Instantly, the only relevant facts alleged were that [CYS] had received a ChildLine referral for possible medical neglect. Clearly, this was insufficient to support the court's order compelling appellants to submit to a search of their home. Nor did [CYS] allege exigent circumstances; the court's order giving appellants ten days to comply indicates that this was not an emergency situation where the child's life was in imminent danger.

*Id.* at 378.

Notably, we also observed that there was no link between alleged abuse and the home conditions. *Id.*

Turning to the case at bar, we similarly conclude that Fayette CYS did not allege sufficient facts to warrant compelled compliance. Here, while there were three separate reports regarding Father's alleged intoxication, none contained any specificity regarding the degree or type of impairment, nor

schools)." 55 PA ADC § 3490.4. Often, "a ChildLine" is shorthand for the report itself.

alleged how such impairment caused any of the children to be abused or neglected. Only the first report alleged that a child was even present when Father appeared to be under the influence. And even then, Fayette CYS did not obtain potentially available security footage to see for themselves.[6]

More importantly, none of the interviews with the children resulted in further suspicion of abuse or neglect. Fayette CYS did not allege any concerns with Mother, beyond the allegation that she was a victim of domestic violence – a charge that could not be substantiated by court records. And critically, Fayette CYS did not allege a link between the alleged abuse/neglect and the parents' home. Nor did Fayette CYS allege exigent circumstances; in fact, the allegations were months old.[7]

It appears here that CYS merely sought compliance so that they could close the investigation. *See* N.T., 1/28/19, at 48. These facts do not constitute a sufficient foundation for a finding of probable child abuse or neglect under the CSPL. The court erred when it ordered the parents to submit to a home inspection.

_____

[6] The report alleged that Father was with one of his children when he went to Greene County CYS's headquarters in the course of his representation of another parent. Greene CYS is located in the Fort Jackson Building, which is equipped with security cameras. The supervisor testifying on behalf of Fayette CYS stated that she was unaware that Greene CYS had surveillance in the building. *See* N.T., 1/28/19, at 11.

[7] We are cognizant of Fayette CYS's explanation that the investigation was impeded by bureaucratic delays, as the case was transferred from judge to judge during the holidays. However, such a delay did not prevent the agency from taking the children into protective custody if the agency felt that the circumstances necessitated removal. *See* 23 Pa.C.S.A. § 6315.

Finally, we address Father's final contention that the court erred by ordering an observable drug test. While a urine analysis would undoubtedly constitute a search, where constitutional safeguards would necessarily attach, we conclude that there is no statutory authority for a CYS agency to petition for a drug test prior to a dependency adjudication. Unlike a home inspection, a drug screen is not mentioned, much less mandated, anywhere in either the CPSL, or Title 55 of the Pa. Code.

Fayette CYS cites a domestic relations rule, Pa.R.C.P. 1915.8 ("Physical and Mental Examination of Persons"), as authorization for a court to order the drug testing of a parent. Rule 1915.8(a) provides that, in custody cases, a court may order the children and/or any party to submit to and fully participate in an evaluation by an appropriate expert. The 2007 Comment to that Rule specifies that the Rule "addresses the process for any number of expert evaluations a court may order in a custody case, including, but not limited to, physical, mental health, custody and/or drug and alcohol evaluations, and/or home studies."

Both Fayette CYS and the trial court cite our decision in **_Luminella v. Marcocci_**, 814 A.2d 711 (Pa. Super. 2002), wherein we concluded that the court-ordered drug test of a parent under Rule 1915.8 was allowable, so long as the respective search survived constitutional scrutiny.[8] But we do not

_____

[8] There, we conducted the three-prong balancing test adopted by the Supreme Court of the United States to ascertain the constitutionality of a search. In

- 16 -

conduct a constitutional analysis, because the instant matter is not a custody dispute.

Unlike in the domestic relations context, here – in a CYS investigation conducted prior to a dependency adjudication – there is no legislative underpinning that authorizes the court to order the drug testing of a parent. While the court is itself a state actor, a contested custody action between parents (or statutorily authorized family members) does not involve the same type of governmental intrusion as a CYS Agency's investigation of child abuse or neglect, either in degree or in kind. The General Assembly has legislated extensively in the area of child abuse and neglect. In our role as an error-correcting court, we decline to derive from another area of the law the government's authority to drug test parents, prior to a dependency adjudication, when no explicit provision authorizing the same exists in either the CPSL or corresponding regulations.

We echo the emphasis in *In re Petition to Compel*. We are sympathetic to CYS agencies' mission and mandate to conduct and complete investigations in order to protect the children of our Commonwealth from abuse and neglect. *Id.*, 875 A.2d at 378-379. We do not suggest that Fayette

---

*Vernonia School Dist. 47J v. Acton*, 515 US 646, 654 (1995) the Supreme Court announced three considerations to determine the reasonableness of a governmental search that was conducted pursuant to special needs beyond the normal need for law enforcement. They are: 1) the nature of the privacy interest upon which the search at issue intrudes; 2) the character of the intrusion that is complained of; and 3) the nature and immediacy of the governmental concern at issue, and the efficacy of the means for meeting it.

CYS should have stood by and done nothing in the face of these allegations. Here, Fayette CYS did all it could do: the agency interviewed each child; it reviewed court records to determine the veracity of the domestic violence allegation; it requested a home visit and when the parents refused, it petitioned the court. *See id*. at 379. This fulfilled Fayette CYS's statutory obligations.

The court should have denied the request to compel further cooperation from the parents. At that point, Fayette CYS would have had several options, including further investigation to collect additional facts to support the issuance of a search warrant for the parents' home, and/or filing a formal petition for dependency. The agency's responsibilities under the DPW regulations and the CPSL to investigate each and every allegation of child abuse and neglect, including visiting the child's home at least once during its investigation, do not trump the parents' constitutional rights under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

Order vacated. Jurisdiction relinquished.

Judge Musmanno joins the Memorandum.

Judge Ott concurs in the result.

Judgment Entered.

- 18 -

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/26/2019